IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWAYNE ALLEN VALENTINE, | § | |
| FCI 41307-177, | § | |
|     Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-11-0586 |
| | § | |
| DIRECTOR, TDCJ-CID, *et al.*, | § | |
|     Defendants. | § | |

## OPINION ON DISMISSAL

Plaintiff, a federal inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983, in early December 2010. (Docket Entry No.1). Plaintiff alleges that he was incarcerated forty-six days beyond the state sentence pronounced by the convicting court and that defendants failed to investigate the miscalculation of his maximum release date. (Docket Entry No.1). He seeks compensatory and punitive damages on due process grounds. (*Id.*).

Defendants Rick Thaler, Vanessa Jones, and Anissa Commander[1] have filed a motion for summary judgment (Docket Entry No.31), to which plaintiff has filed a response. (Docket Entry No.36). For the reasons to follow, the Court will grant defendants' motion for summary judgment and dismiss this case with prejudice.

### I.    BACKGROUND

Plaintiff entered a guilty plea to three counts of robbery by threats and was convicted of the same in the Tarrant County, Texas Criminal District Court Number Three on October 5, 1995. (Docket Entry No.31-1, pages 6-11). He was sentenced to fifteen years confinement in the Texas Department of Criminal Justice-Correctional Institutions Division

---

[1] Although plaintiff named parole supervisor FNU Conrad as a defendant, the Office of the Attorney General for the State of Texas determined that FNU Conrad was Anissa Commander, an employee with the Texas Board of Pardons and Paroles. (Docket Entry No. 27). The Court did not order that defendants George W. Lang II, Melba Knobloch, Joyce Griffin, Nenette Carter, or FNU Edgin be served with process. (Docket Entry No.13).

("TDCJ-CID"), to be served concurrently. (*Id.*, pages 6, 8, 10). While incarcerated on the Tarrant County convictions, plaintiff entered a plea of guilty to robbery in the 367th Judicial District Court of Denton County, Texas, for which he was sentenced on April 4, 1996, to another fifteen years confinement in TDCJ-CID. (*Id.*, pages 3-5). The Denton County District Court credited plaintiff with 506 days toward this new sentence. (*Id.*, page 3).

In 1997, Ms. Edgin, an employee with the State Counsel for Offenders, filed a motion for a *Nunc Pro Tunc* Order in the Denton County District Court. (Docket Entry No.11, pages 13, 16). On July 8, 1997, the Denton County District Court entered an Order Granting Credit for Jail Time *Nunc Pro Tunc* crediting petitioner with an additional 102 calendar days for a total of 601 days calendar time. (Docket Entry No.31-2, page 6). TDCJ records noted the correction per the *Nunc Pro Tunc* Order on September 4, 1997. (Docket Entry No.31-1, page 12).

Plaintiff, however, determined that the Denton County District Court's *Nunc Pro Tunc* Order did not account for all of the calendar time to which he was entitled; he again sought the assistance of the State Counsel for Offenders. Plaintiff was informed by Legal Assistant Nenette Carter in a letter dated August 9, 1999, about Ms. Edgin's efforts in obtaining the 1997 *Nunc Pro Tunc* Order in 1997. (Docket Entry No.11, pages 13, 16). In March 2000, plaintiff again contacted the Legal Services for the State Counsel for Offenders regarding the miscalculation of his sentence. (*Id.*, page 9). Legal Assistant Joyce Griffin responded by letter dated March 28, 2000, that plaintiff had received 601 days jail time credit and that the calculation was correct for the sentence assessed from the Denton County robbery conviction. (*Id.*).

In October 2008, plaintiff filed a request for correction of calculation of the time credit earned toward completion of his sentence per TDCJ's time credit dispute resolution procedures. (Docket Entry No.11, page 7). Plaintiff also contacted the Office of State Counsel for Offenders. George W. Lang, II, the Chief of the Appellate Section, responded to his letters in mid-October and late November 2008 through Legal Assistant Melba Knobloch.[2] (Docket Entry No.11, pages 11-13). On October 14, 2008, Knobloch indicated by letter that she had contacted the Denton County Sheriff's Office regarding jail time credits and that the Office of the State Counsel for Offenders could do nothing more until they had a response from the Sheriff's Office regarding a jail time correction. (*Id.*, page 13). On November 25, 2008, Knobloch wrote to plaintiff on Lang's behalf that the State Counsel for Offenders could not pursue another *nunc pro tunc* order because when the *nunc pro tunc* was filed in 1997, the Office of State Counsel was unaware that plaintiff had taken a plea agreement accepting 506 days of jail time credit. (*Id.*, page 12).

On March 27, 2009, Vanessa Jones, the Chairperson for Classification and Records, denied plaintiff's time credit dispute resolution request by referring to the 1997 *Nunc Pro Tunc* Order awarding plaintiff with 601 days credit with a begin date of August 12, 1994; Jones noted that TDCJ could not alter this date except by a certified order sent to TDCJ from the convicting court. (Docket Entry No.11, page 7). Jones directed plaintiff to the State Counsel for further assistance. (*Id.*).

On April 6, 2009, plaintiff filed a federal habeas petition in the Eastern District of Texas, in which he complained that he was entitled to receive credit for 698 days jail time toward his sentence on the Denton County robbery conviction and that he should be released on May 7,

---

[2] The record is unclear whether plaintiff sought to file another motion for a *nunc pro tunc* order or appeal the first *nunc pro tunc* order. *See Blanton v. State*, 369 S.W.3d 894 (Tex. Crim. App. 2012) (addressing right to appeal from *nunc pro tunc* orders).

2009. *Valentine v. Director*, TDCJ-CID, Civil Action No.4:09cv00157-MHS-ALM (E.D. Tex. Aug. 21, 2009). On May 3, 2009, the Denton County District Court entered a second *Nunc Pro Tunc* Order crediting petitioner with a total of 698 days calendar time.[3] (Docket Entry No.31-2, page 9). Per this second *Nunc Pro Tunc* Order, petitioner's sentence for the Denton County robbery conviction expired on May 6, 2009. (Docket Entry No.31-4, page 3).

After receiving mail from the Eastern District Court that the Denton County District Court had given him additional jail-time credit, petitioner submitted an I-60 to prison officials on June 2, 2009, about the new discharge date. (Docket Entry No.11, page 20). In response, Anissa Commander, an employee with the Texas Board of Pardons and Paroles, informed plaintiff that Denton County had to notify TDCJ to change his current discharge date. (*Id.*). On June 8, 2009, the Denton County District Clerk sent TDCJ a copy of the second *Nunc Pro Tunc* Order. Denton County District Clerk's Website.[4] TDCJ Classifications received the Order on June 15, 2009, and confirmed the veracity of the Order via contact with the Denton County District Clerk's Office. (Docket Entries No.31-2, pages7-9; No.31-4, page 3). On June 18, 2009, Nathaniel Quarterman, the former Director of TDCJ, issued a certification that plaintiff's discharge date was June 22, 2009. (Docket Entry No.11, page 2). In response to an I-60, Anissa Commander informed plaintiff that he would be transferred to the Huntsville Unit in preparation for discharge and discharged from TDCJ on June 22, 2009. (Docket Entries No.11,

---

[3] Plaintiff does not state and the record does not show who filed the motion for a second *Nunc Pro Tunc* Order, correcting the sentence. However, Denton County court records reveal that a letter requesting *nunc pro tunc* was filed on April 24, 2009. http://justice1.dentoncounty.com/PublicAccess/CaseDetail.aspx?CaseID=1553588 (viewed October 10, 2012). Plaintiff filed a letter on May 5, 2009. *Id.*

[4] http://justice1.dentoncounty.com/PublicAccess/CaseDetail.aspx?CaseID=1553588 (viewed October 10, 2012).

4

page 18; No.31-2, page 10; No.31-4, page 3).  Plaintiff was discharged on June 22, 2009.[5] (Docket Entry No.31-4, page 3).

Plaintiff seeks monetary relief from defendants employed by the State Counsel for Offenders, *i.e.*, Nenette Carter, Ms. Edgin, Joyce Griffin, Melba Knobloch, and George W. Lang, II, on grounds that they miscalculated his release date and ignored his requests for an investigation of the correct sentence date. (Docket Entry No.1, pages 3-4). He seeks relief from Vanessa Jones, the Chairperson for Classification and Records, because she denied his 2008 time credit dispute resolution on March 27, 2009, based on the first *Nunc Pro Tunc* Order; plaintiff claims she refused to investigate or refer to Denton County criminal court documents, which showed the correct dates. (Docket Entry No.11, page 8).

Plaintiff also seeks monetary relief from Parole Supervisor Anissa Commander on grounds that she ignored his request for a new discharge date after he informed her of the second *Nunc Pro Tunc* Order. (Docket Entry No.1, page 4). Finally, plaintiff seeks relief from the Director of TDCJ-CID, formerly Nathaniel Quarterman, now Rick Thaler, on grounds that he supervised an ineffectual procedural system for resolving time disputes, and failed to follow the release policy and investigative procedures to secure plaintiff's accurate release. Plaintiff also seeks relief from Quarterman on grounds that he was responsible for the conduct of his subordinates who failed to follow their duties to correct the miscalculated sentence. (Docket Entries No.1, page3; No.11, pages 3, 6).

The current TDCJ-CID Direction, Defendant Rick Thaler and Defendants Vanessa Jones, and Anissa Commander have filed a motion for summary judgment on the ground that plaintiff has failed to establish a viable cause of action for a procedural due process

---

[5] On August 21, 2009, plaintiff's federal habeas action was dismissed as moot. Civil Action No.4:09cv00157 at Docket Entry No.16.

5

violation. (Docket Entry No.31, pages 9-10). Defendants also assert the defenses of qualified immunity and Eleventh Amendment immunity. (*Id.*, pages 10-12).

## II.    DISCUSSION

### A.    Defendants Thaler, Jones, and Commander

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

#### 1.    Eleventh Amendment Immunity

Defendants move for, and are entitled to, Eleventh Amendment immunity for claims against them in their official capacity under § 1983. Congress has not waived sovereign immunity for § 1983 suits. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (noting that "neither a state nor its official acting in their official capacities are 'persons' under § 1983"). Defendants are employed by the Texas Department of Criminal Justice, which is a state agency, immune from a suit for money damages under the Eleventh Amendment. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). Therefore,

6

all claims for monetary damages against all defendants, in their official capacities, are subject to dismissal.

2. Qualified Immunity

Defendants assert the defense of qualified immunity. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* Notwithstanding the plaintiff's burden, the Court draws all inferences in his or her favor. *Id.*

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). A court may rely on either prong of the defense in its analysis. *Id.*

If the official's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's

actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the official's exact act have been illegal. *Id.* at 236-37. An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). "[L]aw enforcement officers who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Collins*, 382 F.3d at 537 (citation omitted).

"Detention of a prisoner for over 'thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.'" *Porter v. Epps*, 659 F.3d 440, 445 (5th 2011) (quoting *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir.1980)); *see also Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010) (stating that "the due process clause is implicated in cases of continued incarceration . . . beyond the term of a court-ordered sentence"). Arguably, due process concerns are implicated in this case because plaintiff was incarcerated more than thirty days beyond the expiration of his sentence pursuant to the second *Nunc Pro Tunc* Order. The record, however, shows that defendants' conduct was objectively reasonable in light of the facts available to them at the time.

Under Texas law, the convicting court is required to grant an applicant pre-sentence jail time credit when sentence is pronounced. TEX. CODE CRIM. PROC. ANN., art. 42.03, §2(a) (Vernon 2004). If the convicting court fails to award such credit at the time sentence is imposed, the convicting court has the authority to correct the judgment to reflect the appropriate time credit by *nunc pro tunc* order and should do so. TEX. R. APP. P. 23.2. A *nunc pro tunc* order is the only means by which a defendant can obtain relief from the omission of back-time

8

credit from a judgment, at least until the defendant is confined beyond his correct maximum discharge date. *Ex parte Deeringer*, 210 S.W.3d 616, 617-18 & n. 7 (Tex. Crim. App. 2006). In this case, the convicting court entered a second *Nunc Pro Tunc* order on May 3, 2009, which resulted in the expiration of plaintiff's sentence three days later, on May 6, 2009. (Docket Entries No.31-2, page 9; No.31-4, page 3).

State law also requires TDCJ to award inmates in its custody pre-sentence jail time credits as reflected in the judgment, provided that such credits do not pre-date the date of commission of the offense. TEX. CODE CRIM. PROC. ANN., art. 42.03,§3 (Vernon 2004); *Ex parte Wickware*, 853 S.W.2d 571, 573 (Tex. Crim. App. 1993). Until notified on June 15, 2009, of the second *Nunc Pro Tunc* Order entered on May 3, 2009, TDCJ had calculated plaintiff's discharge date of August 11, 2009, based on a facially valid *Nunc Pro Tunc* Order entered on July 8, 1997, by the Denton County District Court. On June 15, 2009, TDCJ officials received the second *Nunc Pro Tunc* Order and confirmed the veracity of the Order via contact with the Denton County District Clerk's Office. (Docket Entries No.31-2, pages7-9; No.31-4, page 3). Three days later, Director Quarterman issued a certification that plaintiff's discharge date was June 22, 2009, and preparations were made to transfer him to the Huntsville Unit to process the discharge. (Docket Entry No.11, pages 2, 18; No.31-2, page 10; No.31-4, page 3). Plaintiff was discharged on June 22, 2009, seven days after TDCJ's receipt of the second *Nunc Pro Tunc* Order and more than thirty days after plaintiff's sentence expired. (Docket Entry No.31-4, page 3).

Defendant Quarterman's conduct in holding plaintiff beyond the discharge date pursuant to the 1997 *Nunc Pro Tunc* order was objectively reasonable because the May 2009 *Nunc Pro Tunc* Order was not received by TDCJ until June 15, 2009, after plaintiff's sentence

9

expired. Once notified, defendant Quarterman acted promptly. Within a week of notification, plaintiff was discharged from TDCJ.

Moreover, plaintiff fails to show that Quarterman supervised an ineffectual procedural system for resolving time disputes or that he failed to follow the release policies and investigative procedures to secure petitioner's release. Plaintiff does not cite to any policy or procedure that Quarterman violated; nor does he describe how the time credit procedural system is ineffective. Furthermore, "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Plaintiff also claims that Director Nathaniel Quarterman failed to ensure that subordinates comply with TDCJ policies to determine the accuracy of plaintiff's release date. (Docket Entries No.1, page 3; No.11, pages 3, 6). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Plaintiff does not assert that Director Quarterman had any personal involvement with the events at issue except that his name is on plaintiff's discharge date certificate. (Docket Entry No.11, page 3). Nor does plaintiff cite to any policy, custom, or procedure that Quarterman implemented or failed to implement. Instead, plaintiff claims that Quarterman failed to supervise employees. A supervisor may be liable for failure to supervise if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). Plaintiff,

however, states no facts to support his failure-to-supervise claim; therefore, his conclusory claim is subject to dismissal.

Likewise, plaintiff's claims against Anissa Commander with respect to her responses to his I-60s in June 2009, do not defeat her entitlement to qualified immunity. Commander's response to petitioner's I-60 in early June 2009, *i.e.,* that "the County must notify TDCJ Records to change it," was objectively reasonable. The statement was a true statement of law and facts known to her at the time. Plaintiff also claims that Commander ignored his I-60 dated June 15, 2009, that he was incarcerated beyond his sentence until the Magistrate Judge of the federal district court, where his federal habeas was pending, issued a show cause order on June 11, 2009. (Docket Entry No.11, page 16). Thereafter, Commander informed him that he would be transferred to another unit for discharge. (*Id.*). Commander's response to the I-60 belies a claim that she ignored his complaint and contributed to the illegal confinement.

Plaintiff's claim that Vanessa Jones, the Chairperson for Classification and Records, violated his right to due process by denying his 2008 time credit dispute in March 2009, without adequately investigating the Denton County criminal court documents, is also without merit. In computing his discharge date, Jones relied, as state law required, on the facially valid 1997 *Nunc Pro Tunc* Order, which was in effect at the time plaintiff engaged in the time credit dispute procedure.

Because the conduct of defendants Thaler, Jones, and Commander was objectively reasonable in light of the circumstances confronting them, the Court finds that Thaler, Jones, and Commander are entitled to summary judgment on their defense of qualified immunity.

11

B.  Defendants Carter, Edgin, Griffin, Knobloch, and Lang

The Prison Litigation Reform Act requires that the district court review a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). On review, the Court must identify cognizable claims or dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b); 1915(e)(2)(B). In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it. *Haines v. Kerner*, 404 U.S. 519 (1972).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). A complaint may be dismissed for failure to state a claim if the plaintiff does not allege enough facts to state a claim to relief that is "plausible" on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff claims that defendants employed by the State Counsel for Offenders, *i.e.*, Nenette Carter, Ms. Edgin, Joyce Griffin, Melba Knobloch, and George W. Lang, II, miscalculated his release date and ignored his requests for an investigation of the correct sentence date. (Docket Entry No.1, pages 3-4). Plaintiff's pleadings do not support his claims that these defendants miscalculated plaintiff's sentence in light of the information they had

available to them, that they were unresponsive to his requests. The March 28, 2000, letter from Joyce Griffin indicates that Ms. Edgin attempted to verify the dates in custody for plaintiff's Denton County conviction and that she relied on records from Tarrant County, where plaintiff had been detained, to determine when Denton County placed a hold on him. (Docket Entry No.11, page 9). Griffin attached a hand calculation of plaintiff's sentence. (*Id.*, page 10). In her letter dated August 9, 1999, Nenette Carter indicated that Ms. Edgin filed the motion for a *Nunc Pro Tunc* Order, which the Denton County District Court granted in 1997. (*Id.*, page 11).

Melba Knobloch's October 2008 letter, on behalf of Appellate Section Chief George W. Lang, II, indicates that Lang's office had contacted the Denton County Sheriff's Office concerning plaintiff's jail time credit and was awaiting written information verifying the calculation. (*Id.*, page 13). Knobloch expressed a willingness to send another letter if the information received was incomplete or wrong. (*Id.*). She also indicated that the State Offender's Office would continue to monitor plaintiff's request and to advise him of any changes or developments regarding the status of his case. (*Id.*). Moreover, plaintiff states no facts to show that these defendants had a duty to affect plaintiff's timely release or that they were authorized in any way to order his release.

Furthermore, plaintiff's claims against defendants Carter, Edgin, and Griffin are time-barred. "The limitations period for a § 1983 action is determined by the state's personal injury limitations period, which in Texas is two years." *Whitt v. Stephens Cnty.*, 529 F.3d 278, 282 (5th Cir. 2008) (internal citations omitted). Limitations "begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Edmonds v. Oktibbeha Cnty., Miss.*, 675 F.3d 911, 916 (5th Cir. 2012) (internal quotation marks omitted). By plaintiff's own account, he had sufficient information to

know that his sentence had been miscalculated and to assert claims against defendants Nenette Carter, Ms. Edgin, and Joyce Griffin no later than 2002. Plaintiff, however, did not file suit against these defendants until December 2010, more than eight years after his claim accrued.

Accordingly, plaintiff's claims against defendants George W. Lang II, Melba Knobloch, Joyce Griffin, Nenette Carter, and FNU Edgin are subject to dismissal pursuant to 28 U.S.C.§§1915(e)(2)(B), 1915A.

### C. All Defendants

To warrant punitive damages, plaintiff must allege facts showing that the defendants' conduct was egregious or reprehensible. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Punitive damages may be awarded in §1983 cases when the defendants' conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. . . . The latter standard requires recklessness in its subjective form, *i.e.,* a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003). Neither plaintiff's pleadings nor the summary judgment record reflect facts giving rise to a claim that defendants acted with an "evil intent" or "callous indifference" to plaintiff's constitutional rights. Accordingly, plaintiff is not entitled to punitive damages on his claims against any defendant.

### III. CONCLUSION

After a thorough review of the pleadings, record, and law, the Court ORDERS the following:

> 1. The motion for summary judgment filed by defendants Rick Thaler, Vanessa Jones, and Anissa Commander, is GRANTED.

(Docket Entry No.31). All claims against defendants Thaler, Jones, and Commander are DISMISSED with prejudice.

2. Plaintiff's claims against defendants George W. Lang II, Melba Knobloch, Joyce Griffin, Nenette Carter, and FNU Edgin are DISMISSED with prejudice as legally frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

3. This civil rights action is DISMISSED WITH PREJUDICE.

4. All other pending motions, if any, are DENIED.

The Clerk will provide a copy of this Order to the parties and a copy by facsimile transmission, regular mail, or e-mail to Attorneys Carol Marie V. Garcia and Susan Elizabeth Werner, of the Office of the Texas Attorney General, P.O. Box 12548, Austin, Texas, 78711-2548 and the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-strikes List.

SIGNED at Houston, Texas, this 6th day of February, 2013.

*[signature]*

MELINDA HARMON
UNITED STATES DISTRICT JUDGE